Good morning. My name is Michael Evans and I am appearing on behalf of the Plaintiffs and Appellants, the Fair Housing Councils of San Fernando Valley and San Diego. May it please the Court. The main issue in this case is whether Roommate is immune under Section 230c1 of the Communications Decency Act for the content of its own forms, content that Roommate alone creates and develops. The District Court concluded that Roommate could be immune, in fact was immune, for its own forms. And plaintiffs contend that at the very least this was error. At an irreducible minimum, in order to obtain immunity under Section 230c1 of the Communications Decency Act, an interactive computer service such as Roommate must establish that the content challenged in the litigation originated with a third party rather than with the interactive computer service itself. Well, it certainly did here, didn't it? I mean, they don't list anything that doesn't come from some real people out there. We contend, Your Honor, that the form itself, before any information in the form is added by users, is a violation of the Fair Housing Act. Under the Fair Housing Act, it is unlawful to make inquiries into a prospective renter's protected status, such as sex, familial status, or as in the other cases we cite race and national origin. But what under 3604c makes it unlawful to require housing providers to state a preference? Is there anything you state in your papers that requiring housing providers to state a preference violates 3604c? The plain language doesn't, so what is the support for that? Our argument with respect to the inquiry, at least two parts of the case, with respect to the inquiry that Roommate makes into prospective renter's protected status, we argue that those inquiries violate the Fair Housing Act because the inquiries indicate an intent to discriminate. But they don't indicate a preference, right, for anything, one thing or the other. That's right. They indicate an intent to discriminate. The plain language of section 3604c provides, and I'll just leave out the parts that don't apply here, it shall be unlawful to make, print, or publish, or cause to be made, printed, or published, any notice, statement, or advertisement with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination, or an intention to make any preference, limitation, or discrimination. So in the plain language of section 3604c, it's unlawful to make any statement, whether or not the statement itself conveys a preference, it's unlawful to make any statement that indicates an intent to discriminate. What about the regulation? Oh, I'm sorry. So who's making the statement? The statement is made by the applicant, by the person filling out the form. Not under our theory of the case. Under our theory of the case, the form itself is the statement that we challenge. And we also challenge other aspects of the website's operations. Oh, explain to me. How is that a statement? How is a form a statement? A form is a communicative act. It doesn't say, I prefer, you know, the form that you pick. I like straights, I like gays, I like straights or gays, I am, you know what I mean? I say, Jens Kaczynski, the cases that we cite, the Jancic v. Hudd case and the Housing Rights Center v. Sterling case, which was cited in our opening brief, are both cases in which the courts have expressly found that in mere inquiry into a prospective renter's protected status, race, national origin, or the others. Somebody who is not, who does not have, is not a owner of property or a lessor or somebody who is, I mean, this is somebody, we don't have a broker, we don't have somebody who is out to, I mean, is it illegal for me to ask you your preference for who you prefer to live with? I'm not going to do it, I'm just saying, let's say we're in a bar and we sort of have, you know, chat up waiting for the football game to start and I ask you how, you know, what are your living preferences? Your inquiry in that context, for any number of reasons, your inquiry, as you stated, would not have any, create any liability in the Fair Housing Act. Just because it's me? You asked two different questions. The first question is, does an inquiry violate the Fair Housing Act? Yeah. The Jancic case that we cite and the Human Housing Rights Center versus Sterling case both hold that a mere inquiry does. Your second question. What about Soel says? I mean, Soel says an inquiry doesn't per se. Yes, well, Section 3604C is governed by what's called an ordinary listener, ordinary reader standard. And the question is, under the circumstances, does a particular statement indicate an intent to discriminate? In the context in both Jancic, the Seventh Circuit case, and Sterling, the Central District case, the Court found that the statement under the circumstances did indicate an intent to discriminate, a type of discrimination called screening. We would assert that unlike Soel's and like Jancic and like Sterling in this case, roommates' questions, inquiries into protected status would be understood as a reasonable person,  Let me ask you, was Roommate in the business of putting prospective renters together with prospective landlords? Is Roommate in that business? Yes. And do they do that for profit? As far as I know. And when they ask the question then, who do you want to live with or what kind of person do you want to live with, is that in connection with a contemplated real estate transaction? Yes, sir. And that's the difference between that and Judge Kuczynski asking you in a bar? Yes, sir. And I would like very much to answer Judge Kuczynski's very good question. This issue is. Oh, not so good. This is an issue, Judge Kuczynski, that was decided by the Second Circuit in a case handed down after the briefing closed in this case. There's a decision by the Second Circuit on the last 12 months, United States v. Space Hunters, which involved an entity precisely like Roommate. Not an online entity, but a housing information vendor. An entity that on its own collects, I'm sorry, rents or sells no property, but merely acts as an intermediary. Provides listings and attempts to match up housing providers with home seekers. And there was a claim that the intermediary, the housing listing service, engaged in discrimination under Section 3604C. And the service said to the Second Circuit, well, I can't be liable under Section 3604C because I don't own or rent any housing myself. I'm just an intermediary. And the Second Circuit specifically rejected that argument and said that for any number of reasons 3604C applies to anyone who engages in the prohibited conduct. And there's a longstanding history of cases under the Fair Housing Act holding that crucial intermediaries are subject to the Fair Housing Act, whether or not they personally sell or rent housing. They're crucial intermediaries when they play a significant enough role in the housing market. Let me ask you a couple more questions because I think I understand your position at this point. I'd like to at some point maybe address standing and why your group has standing in this case. And I don't know where you want to take time to do that. Maybe then, I don't know when. But, so the more substantive question is, you drop a footnote suggesting that this service is not, this is your footnote one on page, I mean, I'm sorry, it's footnote two on page seven, saying this doesn't just apply to people looking for roommates, this applies to landlords looking for tenants. And it's sort of tantalizingly left out there. You know, there is sort of the record question as to what extent this is supported, but is there a distinction in your mind between people looking for roommates as opposed to landlords looking for tenants? Well, as a practical matter, there's a difference. Under the Fair Housing Act, the differences are extremely limited under the statute. There's a Mrs. Murphy exception that applies to the rental of rooms in some circumstances, so yes, there would be a legal difference under the Fair Housing Act to that extent. There also might be. I'm sorry, but I thought you took the position that the Mrs. Murphy exception doesn't apply, because that only applies to, let it meet the four requirements, what, single family home. This is slightly different. We take the position that the Mrs. Murphy exception may apply to some shared housing, including some of the shared housing that is part of roommate services. Absolutely, Mrs. Murphy might apply to some of the shared housing. What about your typical case where somebody is renting an apartment, maybe they recently divorced, for whatever reason they realize they can't quite afford to keep the apartment on their own, and they decide it would be very nice to have a roommate to help pay the rent? So instead of giving up the apartment, I look for a roommate to pick up part of the rent. So they put an ad, and they decide, you know, I have some preferences, somebody living under my roof, somebody sharing my bathroom maybe, so I have some preferences, and among the preferences, you know, I'd really prefer to have somebody the same sex as myself, because I don't want to sort of have romantic entanglements, sort of embarrassment of people. You know, you understand the considerations. Perfectly, perfectly understandable. Yes. Well, there's a number of answers to that question. Give the answers. The specific question is, would expressing that kind of preference be prohibited by the statute? With respect to shared housing, almost all preferences are going to be prohibited by the statute. There is possibly an exception for a statement that would express a preference for the same sex. And as a practical matter in this case, regardless of whether that exception exists under the law, we would not press it. In other words, we would not object to any ads that state a preference for the same sex. When there was any time that… Well, certainly you're assuring that you wouldn't, but the nature of legal precedent is that once you let them float out there on the stream of commerce, somebody else picks them up and takes them a step further than you would. So we have to take your arguments to their logical extreme, because even if you can't press them, somebody will. You can be sure. You would just leave the question open, Your Honor. We would not press in this case. I understand, but in deciding this case and writing an opinion, when you leave a question like that open, you are allowing for the possibility that the answer would be, let's cover two. So I'm wondering, what would be the answer? I mean, much of what they do here, much of the business, maybe not all of it, maybe not most, but much of what they do is find roommates who often are looking just for somebody of their own sex, because they don't want to have the problems that you have with having people of opposite sex. Our position, the Fair Housing Act on its face clearly applies to shared housing, and on its face includes no express exception for sex discrimination. That said, there is some language in some statements by HUD, which is the agency with the authority to interpret the Fair Housing Act, indicating that in the case of shared housing, it is okay to discriminate on the basis of one's same sex. Regardless of whether that is the law, that is our position in the litigation, and I can't tell you anything more than that. Let me push you just a little bit further. How about sexual orientation? I not only want a guy sharing my apartment, but I'd like a straight guy. I'm not expressing personal preference. I'm married. I'm not looking for a roommate. I'm just saying, you're a guy, you're out there, you're looking for a roommate, and you not only want another fellow, you want a fellow who's straight. Is that okay? Well, let me just say in the first place that in this appeal, it's only the federal claims that are at issue, and the federal law does not apply to sexual orientation. It does not apply to sexual orientation. Fair enough. Okay. It's not on appeal. Okay. Let's put it this way. We certainly have problems with if someone wants to go into a rental agency, and their sexual orientation, as roommate does, their sexual orientation is demanded as a condition of obtaining services, that is objectionable. That is objectionable. I don't think you should have to disclose your sexual orientation in order to participate in the housing market. But that issue is on the state law claims, which are not on this appeal. Okay. Fair enough. Do you at some point want to address standing? Standing. Yes, sir. Well, the standing precedent in this circuit is very clear. There's Fair Housing v. Marin is the case. I believe it's from 2002. And it states that Fair Housing organizations have first-party standing where they have shown that as a result of alleged discrimination, they have diverted resources and suffered the frustration of mission in order to investigate. I looked for that in the record somewhere, but I couldn't find anything actually supporting that. I mean, it's not something you can presume. There are facts in the record. Maybe I just missed it. The Bruno Declaration contains, which is in the excerpts of record. The excerpts don't necessarily address standing because it wasn't raised. Well, I understand. That's why I'm asking the question. The summary judgment record below contained declarations from both Fair Housing Councils establishing frustration of mission and diversion of resources damages consistent with Fair Housing Council v. Marin. Only the declaration relating to the Fair Housing Council of San Fernando Valley is included in the excerpts of record. But we certainly could get you the summary judgment evidence pertaining to the other Fair Housing Council if you're interested. We can get it. It's not a problem. So do you remember off the top of your head what these things are? There's a Bruno Declaration. Bruno is, I believe, the Executive Director of the Fair Housing Council of San Fernando Valley. Okay. Is that typical of the other declarations? I believe so. Do you remember who the others are? I believe it's Mary Scott Knoll is the Executive Director. Knoll with a K? That's correct. Okay. But on the issue of standing, we simply follow the circuit precedent of Fair Housing Council v. Marin. Okay. How much time do you want to save for rebuttal? All of it, please. Okay. Thank you, Your Honor. Good morning, Your Honors. Timothy Alger on behalf of Roommates.com. May it please the Court. I wanted to stress again, and I think the Court's already focused on it, that this is a roommate service. It's an automated website. Well, isn't that an issue of fact as to what the scope of your business is? They allege it goes beyond roommates. Yes, well, that's what I wanted to point out, Your Honor. If someone posts on our site that is not looking for a roommate, then they're abusing the site. When you stay, go to the page. What about this stuff that they have in footnote 2 when they talk about, do you have that brief? I do. I can get it. They say, I'll read it to you while you're getting your stuff. Notwithstanding its name, roommate services are not limited to restrictions. This is on page 7, footnote 2. Are not limited strictly to roommate situations, i.e., shared housing. Nothing in the website prevents housing providers using the roommate service from offering for rent housing that is to be occupied solely by the Roommates.com home seeker. In fact, defendant has marketed itself to, quote, landlord, unquote, in testimonials published on the front page of his website. Also in the small sample of listings in the record, there are housing providers who offer two or more rooms in large houses, or even numerous rooms in co-op housing. And they cite the record. Okay, Your Honor. I don't have the brief handy, but I do know what you're driving at. Do you want mine? Your Honor, I don't need it. When you go to the site and you're asked what your roommate preferences are, you're asked specifically, select the criteria by which we should match your potential roommate. When you're asked about the residence and its location, you're asked specifically, you're asked information about your residence. That's the exact word that's used, Your Honor. Household description. Specify details regarding your household. We couldn't be any more clear about the service that's being provided here, and that is we're matching people based on their preferences for roommates and the location and the situation, the characteristics of the household that's being shared. If people are posting on there other than sharing a home, then they're abusing the site and they're not being truthful in their posting. And I don't think there's any case, I haven't found any case that involved interactive computer service in the CDA where we suddenly lose our immunity simply because someone abuses the site. In fact, the GTE case out of the Seventh Circuit talks extensively about the issue that interactive computer services is not responsible for an abuse. So what we've made, we make very clear that it's a roommate site and we're providing a service for roommates. Let me follow up with this just a little bit. I remember from my years in college a long time ago, I had roommates and there were basically two models that we employed in living with people. One model was you would find somebody who was a friend or friends and you'd go shopping for an apartment. And the other one was that some landlords would simply rent roommate space. So there'd be a two-bedroom apartment and they would say, we will take up to four renters. And if we can't fill up the four, that's a landlord's loss. But then the flip side is that you basically have to accept whoever the landlord puts in that berth. Now, I believe that's still a viable way in which renting takes place. Is the latter kind of situation covered by your service? Your Honor, the site was not set up by lawyers. I suspect that there may be, and the other side has contended, that there are situations where people, there are landlords in the legal sense of the term, have made available space and tried to match up people that way. But again, that's an abuse of the site because that's not, the questions and answers are not consistent with what we're asking here. We're asking people to describe their household. They're just asking people to describe their potential roommate, what they would like in a potential roommate. I think I missed something. Go ahead. I thought in the footnote that Judge Kuczynski referred to, they say that you marketed your show to, quote, landlords in testimonials that you published on the front page of the website. There is some testimony. When you go to the website, there are testimonies, people saying, thank you, roommate, for matching me up with the best person I've ever shared an apartment with. And these are posted in an automated way. They're collected. They're reviewed, but then they're posted and they rotate in an automated way. Again, our site is not operated by lawyers that are saying, what's a landlord? What's the definition of a landlord? If you go to the site and you look at it, landlord, to the extent it's used, is just shorthand for the person who has a place. How do you describe the person who already has a place and wants to share the place? Because most times, that's the paradigm situation. People already have a place. They live in Manhattan Beach. They're close to the shore, the beach. The rent is expensive. They want another person to share with so they can stay in a place of such a beautiful locale. So people are looking for, and that's the way the site is set up, they're looking for people that will come in and share with them in those situations. And in that situation, I think the site was set up in such a way to describe those type of people that already have homes as landlords. But it's not an – I think if we're splitting hairs, it's hard. I think your view is, of course, that they could ask for race and race preferences as well, right? They don't, but they could. Under the Constitution, yes. I'm sorry? I think if we get into a First Amendment argument, yes. I think that if you're looking for someone to share a home – No, let's not get to the First Amendment yet. Let's talk about the – Fair Housing Act. Excuse me? Sorry. Fair Housing Act. Actually, I was going to start with the CDA. The CDA? But either one – I mean, we can take them in order. Either the First Housing Act first or the – The only questions on the form that the Fair Housing Councils are complaining about today are identify your sex and whether you will live with children. That's the only thing that's at issue right here. We do not have any questions regarding race. If you're asking me to take it to a logical conclusion, if we had a drop-down menu asking people what their race was, we would be able to do that. We would be able to do that. And that would not violate – let's start with the Fair Housing Act. Right. The choices are made by the user. The preferences are – What about the authorities or the policing council sites that says you can't inquire as to preference? The cases that they cite all involve actual transactions in property. The Janicek case, the Sterling case, there was actual property – Space Finders? Pardon? Space Finders? I don't know the Space Finders case. They did not submit it in Rule 28 letter. I'm not familiar with that particular case. I don't know what the circumstances were. We don't have an interest in any property. We don't take a cut of any deal. We're not brokers. All we are is we provide a forum for the exchange of information. When you say provide a forum, do you match and send to the perspective – the person seeking to – whatever he does with his property, find a roommate, lease the property. Do you send him specific names based on what they say about their sex or who they want to live with? We have to divide it up. Bear with me a moment so I can get the facts straight. When you go on the site, you're asked to describe yourself. Male. Let's focus on the arguably protected classes that they're complaining about. You're asked whether you're a male or a female. You're asked whether you will live with children or not will live with children. Those are mandatory. Those questions don't violate the Fair Housing Act. I think it's clear. That's not an indication of preference. Okay, what are they complaining? They're complaining about the forum where you're asked what your preferences are. Because you said we don't have any interest in this. We don't take a percentage. We don't do anything. We're just these nice people who put a list up. Right. In addition to putting the list up, don't you make decisions based on the information? No, and that's what I'm getting to, Your Honor. Bear with me. The questionnaire, the forum that says state your preferences. People can choose not to state any preference. They can say any male, any female will live with kids. That is a choice that's made by the user. Somebody says I'm a male and I don't want to live with children. Okay, they voluntarily selected those things, which is not compelling. Then the computer What do you do? Don't give me the history of the world. Right. What do you do when somebody says I don't want to live with children? They will get a notification from us that there's a match based on the preferences that the user has selected. So you said you could put on there, for instance, say black, white, Jewish, whatever. You could put any of that on. If you did put that on, then you would only send to the person who is renting. He says that no Jews. You would send him only Christians under your system. Under that hypothetical, which is not the situation. Yes, Your Honor. It's an automatic match. To use your actual system, let's say you are a woman. And you say you're a woman. You would never be matched with somebody that says I prefer gay men. Right. You couldn't get a chance to write to them and say, look, I may not be a gay man, I'm a woman, but I have a lot of things in common with gay men. I'm very tidy. I have a great sense of decoration. You know what I mean? Whatever. And sort of try to make out a case that they should accept you anyway. That's right. Your service cuts out that possibility. That's right. And absent the CDA, there might be a problem there under the FHA. There might be a problem. But we've got the CDA. The Ninth Circuit said in the Carafano case the selection of the formatting is not itself actionable under the CDA. It's the choices that are made by the user. The content is created by the user's choices. Could you address whether the questionnaire itself, which is roommate speech, is immune under the CDA? Because it is inquiries, and certainly at least some of the Fair Housing cases have said inquiries can be a violation of 3604C. The form itself has no content. Well, it has some content. It's a series of questions. But the questions that they're complaining about is preference based on sex and whether to live with children or not. There's no preference there because the default choices are we'll live with any man, straight or gay, we'll live with any female, straight or lesbian, we'll live with children. So the form, the default form of the form, there's no preference stated. So if you look at the form, you have to focus. They try to mush up the facts here. If you look at the form that they're complaining about, there's no preference. At least as I heard. I'm sorry. Isn't the mere inquiry prohibited? Without suggesting an answer. The mere inquiry? Isn't the mere inquiry? No, I don't think. Or at least. No, I think the Sewell case out of the second. Immune under CDA. Pardon? I mean, the first question would be is the mere inquiry immune under the CDA? The second question would be is the mere inquiry prohibited? Well, in reverse order, I think that the mere inquiry is not a violative of the FHA. I think the Sewell case out of the second circuit says that. We don't have an interest in property. There's no real property transaction going on here. The cases that the other side's concluded. There's no real property transaction going on. That's why you're asking the question in order to give the information to somebody else who's trying to lease property or whichever end it is. Because you're trying to put together two people to make a property transaction. But the preference, the choices that are being made are being made by the user, not by us. That's a different question. You said there's no real property transaction going on. Of course there is. There's the potential for a real property transaction. Well, there always is. You go into a broker, a real estate broker, there's a potential for a property transaction. That's his business. There's the potential. Making transactions. That's the purpose of this website, to make real estate property transactions. I don't believe the inquiry. I don't see anything in the Fair Housing Act, the statute, that says asking someone to describe themselves, I'm a male, I don't have children, violates the act. I don't see that in the statute. Could we also look at the immunity under the CDA and whether your roommate's position is, or the explanation for the position that the questionnaire itself is immune since it's content provided by roommates? Well, what you have to do is focus on what is the wrongful content, and that's what the Carafano case talks about and the Gentry case out of the State Court of Appeals. The court has to look at what's the wrongful content, what's the content that's being sued over. And here is the preference. Whether the questionnaire itself is immune, those statements, that series of questions, is there a theory as to why that would be immune under a TCA? I don't see any actionable content in the questionnaire. That's where I'm having a problem. The questionnaire itself, given the fact that it has no preference in it. Assume it had content. Your Honor, the content is being provided by the user. It's not being provided by us. Let me ask you another question. You have a comment section. I know the legal part. I'm just saying that's a practical thing. Someone says, I'm Christian. I prefer to live with Christians in the comments. Do you use that in your matching? No, Your Honor. You ignore the comments? The contents are not, the search function does not go into the essays. That is additional. A paying member can call up the comments and look at the comments on their own to give them a better idea of whether the person is a compatible. So the matching is based solely on the answers to the questions. Right. The standardized answers to the questions. Just like the matchmaker situation in Carafano. It's an automated system where the computer matches up based on those multiple choice answers. I still haven't quite gotten my arms around why the questionnaire isn't a statement. Is any question not a statement? There's nothing in the questionnaire that asks for your preferences. That's what they're suing over here. By the way, their lawsuit has moved. I think that's quite clear. But they're focusing on the screen. The CDA covers for text people when they don't make statements, when they merely transmit the statements of another. Yes. But a question is itself a statement. I mean, if you ask a question, that is itself a formal statement. It may not disclose much about what you're thinking, but it is a statement. Your Honor, that I won't concede. I mean, let's come up with something. I won't concede that, Your Honor. I think the defamation law makes very clear that a lot of times questions are not actionable.  They don't carry a message. Whether they're actionable is different from whether they are a statement. Certainly a question is a communication. When I ask you a question, there's no doubt that you and I have communicated. Okay. Is there any doubt that the question comes from me? No. Okay. Is there any way you could sort of say that when I'm asking this question, maybe I'm a conduit for my law clerks. That's what it is. Pardon? Maybe I'm a conduit for my law clerks. Okay. But the question could also be my question. Okay. So you don't think that when I ask a question, when somebody asks a question, that is a statement by them? But it's okay. That might be a statement, but it's not an actionable statement. You have to look at what's the wrongful content here. Could I put this another way? If we determine that your questionnaire was not immune under the CDA, so it wasn't covered by that immunity, just say we determined that, could this court decide whether that was actionable or not under the Fair Housing Act, or would it have to be sent back to the district court, which I understand is what the Fair Housing Council argues now. Well, we had cross motions for summary judged, but I think all the facts are sufficient to decide the matter in this court. I don't think there's any need to go back. My point is, and I know I'm repeating myself, my point is that we have to make clear that the form that they're complaining about is an optional form. The answers are optional. They're not compelled to respond to any questions in that form. Right, but if this was the AryanNationsRoommate.com, and it says state your preference, are you white or one of the lower races, I mean that would clearly raise an issue under the Fair Housing Act. Well, that hypothetical carries a message to it. That's carrying the message. Why? It's not suggesting whether it's white or one of the lower races. It gives you a choice. You know, it seems to me at this point you've crossed the Rubicon. It's too late for you to turn back. Once you concede that the question can be an implicit statement, it seems to me you've lost the battle. I haven't conceded that. I don't know. Maybe I misspoke. I haven't conceded that. I don't think merely asking people whether they prefer a male or a female carries any meaning at all, particularly when the question you answered was you prefer white or one of the lower classes. And you said, well, of course, if you ask that kind of question, that would clearly be prohibited. I don't think I said that, Your Honor. I said that that particular hypothetical may carry a message. Our form doesn't carry any message. It just asks people, do you prefer a male or a female? It carries a message. It's okay to prefer one or the other. It carries a message. It's okay to prefer children over non-children. I don't see anything in the Fair Housing Act that makes that unlawful. All right. Maybe it doesn't, but it does carry that message. Well, then we have to move to the First Amendment and whether this message can be regulated. I'm asking a question. I'm asking a question. I'm asking a question.  I'm asking a question. I'm asking a question. I'm asking a question. I'm asking a question. Well, I'm not the alligator in the bathtub here because this is roommate speech. This is speech calculated to find someone to live with, and that falls within the right of intimate association. I don't think the government can regulate speech that vindicates the right of intimate association. So if we – the First Amendment argument is not a throwaway argument in this case. It's an important argument. I think the court should go ahead and reach First Amendment because as the district court did, it essentially put it through in a paragraph at the end of its order saying, oh, well, the housing people, they can't sue roommates.com, but they can sue all roommates.com's users. I don't think that's right at all. I don't think the Fair Housing Act was intended to reach roommates, and to the extent that it does reach roommates, then I think it's unconstitutional as applied, and I think the court has an obligation to reach that issue. To what extent does roommates have the right to raise – have standing to raise the claims of its users? We're not raising the claims of its users. We're raising the claim of our own right to speak. And the government is not in a position to regulate speech. You can't have it both ways. You can't say asking a question is not a statement and then also take the position that you have the right to speak when what you're doing is – No. The only reason we're going, Your Honor, the only reason we would be reaching the First Amendment is because the court will have determined that we're speaking and we're outside the scope of the CDA. That's why – so in other words, if you find, oh, the CDA doesn't immunize roommates, then you're obligated to move on to the First Amendment and decide whether the government can properly regulate speech in this regard, where the speech is vindicating a fundamental right to live with whom you want to live. So if you find that the CDA doesn't apply, you've got to move on to the First Amendment and decide the First Amendment issue. You can't avoid it. I think you should decide the First Amendment issue in addition because we squarely have roommate speech here. And the facts developed in the court below are that this is roommate speech. And Ms. Bruno, the executive director of the Fair Housing Council of San Fernando Valley, she acknowledged in her deposition that it was perfectly okay to choose a roommate based on common interests, common racial background, common language, common heritage, and that was perfectly fine. She said that what was actionable was the advertisement. And, Your Honor, the case law is that if there's lawful conduct, if we've got lawful underlying conduct, then we've got to either apply strict scrutiny or the central Hudson test. And under both tests, the regulation fails. And we go through that in detail in our brief. I'd like to discuss it further if I get more time. Well, next time. Okay, thank you. Thank you. Could you start with telling us the state of the record as to whether this business involves solely roommates looking for roommates or whether it's a broader business or whether there's a factual dispute as to that issue? Your Honor, I guess there's a factual dispute. But in all fairness to Mr. Alger, the focus of this case is on roommates' general practices, and roommates' general practices involve shared housing. Now, so the exceptions are just that. They're exceptions. I mean, we don't claim that the majority of their business is on non-shared housing. So I wouldn't, you know, I don't want to mislead the Court into thinking, oh, well, most of their business is from unshared housing. That's not the case. Well, actually, you have to go just a little further than that. They are not targeting landlords. And the way their form is set up, it's supposed to be used by people who are, in fact, looking for shared housing. I would concede that. I would say, by the way, those are landlords. I mean, when you, the Fair Housing Act only applies to the rental of housing. The rental of housing is the exchange. I understand your position that when you want to get a roommate, you are the landlord. Okay, so you have landlord in that sense. But putting that meaning of landlord aside, there isn't sort of a big business out there of people having apartment houses and using this as a way to… We don't know that there is. We certainly don't know. We don't know the record to say that there is. That's correct. One way or the other. So the most accurate thing one can say about it is your second sentence in footnote 7. Nothing on the website prevents housing providers from using it. Correct. I think, look, a large part of what we want to say here is that, you know, the word roommates itself is a little bit misleading. Most of the housing on this site, I shouldn't say most, the housing on this site certainly includes a large amount of housing where you're not sharing, certainly not sharing bedrooms, you're not sharing bathrooms, large homes with very much separate living spaces. That's part of the question. The other question is even with respect to shared housing, you can have a non-occupant landlord renting rooms in a house and those people that the landlord is renting to are roommates. But there's still an outside landlord involved. We don't know the extent to which the site may be used in those circumstances. But I think we would concede that the site overwhelmingly deals with traditional shared housing. I mean, our argument is not that the site is masquerading as a shared housing site when it is something else. Let me address the question. Our point here is that the questions themselves are not immune. Frankly, the district court decided the case exclusively on the question of CDA immunity, and so these issues about exactly why they violate the Fair Housing Act were never litigated in the district court. Therefore, when we wrote our briefs, we suggested that the most expeditious way to resolve the matter would be to send it back to the district court to deal with those questions. But it was on cross motions for summary judgment, so per hypothesis it's decidable as a matter of law. Absolutely, absolutely. And if that's the case, since the parties did not devote that much attention in their briefs to the Fair Housing Act issues, perhaps you could ask for an additional two-page brief from the parties addressing the issues that have been raised today about whether there's a violation of the Fair Housing Act. And we feel that under Jancic and Sterling, this type of action, statements, inquiries into protected status that under the circumstances indicate and intend to screen are clear-cut violations of the Fair Housing Act, Section 3604C. I think the most that's being indicated is that somebody out there is going to be screening? Well, a roommate conducts the screening. Certainly there are inputs from its users. The landlord that used the site made inputs, but roommate conducts the screening. But an ordinary reader using that test would know that the full universe of housing was not on offer to them. I mean, would they know that men were preferred over women or women preferred over men or that some sort of discrimination was taking place? No. The indication of the statement, what is your sex, the question is asked for one reason and one reason only, to collect information so as to deny you access to housing listings. But somebody else can out there could do that. Well, it's impossible for that to happen without roommate doing it. I mean, it's a computer. Well, the computer did it, but the computer is roommate. I mean, roommate writes the programs, solicits the inputs, and runs the matches. So the screening takes place by roommate. For sure, roommate isn't forcing the landlords to discriminate on particular protected classifications, but they are doing it. And is there a psychic injury that an ordinary reader would incur by knowing that there was some gender differentiation going on? Well, there certainly is a conceivable one. We don't claim any injuries based on particular home seekers. In this case, the only claimed injury is on the part of the Fair Housing Council, and the injuries are the usual minor injuries in terms of what it costs to divert resources and counteract the discrimination. But the flip side of the ordinary reader test is that a reader who perceives this sort of discrimination would suffer some sort of psychic injury. That's certainly one actionable type of harm under the Fair Housing Act, correct? That's correct. But the injury is being denied housing opportunities as well. I mean, you go to the site, you only can gain access to those housing opportunities where your sex has been preferred by the landlord. But that's not the 3604C violation. 3604C incorporates the underlining substantive. It says it's unlawful to make any statement that indicates an intent to discriminate. That's precisely what the Janczyk v. Hudd and Housing Rights Center v. Sterling cases hold, that the inquiry is a violation of 3604C because it indicates an intent to discriminate inconsistent with the other substantive. How do you distinguish Sewell's? In Sewell's, I believe the Court just said on these circumstances it is not apparent that the ordinary reader would find an intent to discriminate. Unlike Janczyk and Sterling, where it was apparent. This case is easier. In Janczyk, for instance, prospective renters are asked, what is your race? And the Court says, look, in the circumstances, I can't imagine any other reason why this question would be asked other than to screen. Here, there's no other reason why the question is asked other than to screen. This case is, if anything, easier. Screening in the sense of discriminate against those people. Screening is a form of discrimination prohibited by the Fair Housing Act where you are denied access to certain listings or housing opportunities because of a protected classification. It's different than the denial, right? You don't get to denial. Screen is before denial. We're not even going to let you apply for the housing. We're going to screen you out beforehand. Thank you, Captain. Thank you very much. This argument will be submitted. Final case of the morning for argument is United States v. Kaiser.
judges: Reinhardt, Kozinski, Ikuta